## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT C. CORDARO,

    Petitioner,

       v.

UNITED STATES OF AMERICA,

    Respondent.

NO. 3:17-CV-0215

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MEHALCHICK)

### MEMORANDUM

Presently before me is Magistrate Judge Karoline Mehalchick's Report and Recommendation (Doc. 34) to the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) filed by Petitioner Robert C. Cordaro ("Cordaro"). Cordaro contends that he is entitled to have his conviction and sentence vacated as a result of the United States Supreme Court's decision in *McDonnell v. United States*, - - - U.S. - - -, 136 S. Ct. 2355, 195 L. Ed. 2d 639 (2016). Although the Magistrate Judge found that Cordaro could properly seek relief pursuant to *McDonnell* through § 2241, she concluded that even if the jury had been instructed in accordance with that decision, Cordaro fails to establish that it is more likely than not that no reasonable juror would have convicted him. As such, the Magistrate Judge recommends that the Petition be denied. Cordaro filed timely objections to the Report and Recommendation. (Doc. 37). Because Cordaro fails to demonstrate that he is entitled to relief under 28 U.S.C. § 2241, the Report and Recommendation will be adopted, the objections thereto will be overruled, and the Petition will be denied.

### I. Background

**A.**    *Cordaro I.*

Cordaro, a former Lackawanna County Commissioner, was previously convicted of multiple offenses relating to allegations that he demanded payments from contractors and firms who had or wished to receive contracts with Lackawanna

County during the time he served as an elected commissioner. *See United States of America v. Cordaro*, No. 3:10-CR-0075 (hereinafter *Cordaro I*).  Cordaro was indicted on March 16, 2010 for conduct relating to that position, (*see Cordaro I*, Doc. 1)[1], and a superseding indictment was returned on October 5, 2010.  (*See Cordaro I*, Doc. 47).  Subsequently, the Second Superseding Indictment was returned on March 29, 2011.  (*See Cordaro I*, Doc. 94).  Cordaro and his co-Defendant proceeded to trial in June 2011 on the Second Superseding Indictment.

At trial, numerous witnesses testified concerning illegal payments made to Cordaro.  For example, Al Hughes ("Hughes") testified that he was the conduit of bribes from Acker Associates (P.J. McLaine), a firm that was doing substantial business with Lackawanna County, to Cordaro.  These payments to Cordaro were said to be $10,000 per month and totaled $365,000.  Hughes received Form 1099s from Acker Associates for many if not all of the alleged payments.  There was no evidence or suggestion that Hughes, a funeral director, was performing any services for Acker Associates.  It was uncontested that all Hughes did for Acker was to act as a conduit for the bribes.  There were also recordings of telephone conversations between Hughes and Cordaro referencing Hughes' complaints that Acker Associates had given him 1099s and that payments to him were subject to tax.

Don Kalina of Highland Associates testified that he gave Cordaro $30,000 when no one was present at Highland's offices except Cordaro and Kalina.  James Finan, Lackawanna County's Director of Transportation, testified that he replaced the architect working on a project with Highland at Cordaro's request.

Michael Pasonick, an engineer who had contracts with Lackawanna County, testified he made two cash payments of $1,000 each to Cordaro.  The first payment was made on December 29, 2003, and the second payment was made on March 17, 2004.  There was an appointment with Pasonick on March 17, 2004 noted in Cordaro's

---

[1]     Indicted with Cordaro was fellow Lackawanna County Commissioner Anthony Munchak ("Munchak").

calendar.

There was also testimony that Hughes brought Cordaro into a cell tower project at the suggestion of Acker Associates. When the tower was sold, Cordaro, who was not named as a partner, received $14,000.

Marc Boriosi testified that he made a cash payment of $2,000 to Cordaro. Boriosi and his partner, Charles Costanzo, replaced Joseph Ferrario's firm as the processors of workers compensation claims for Lackawanna County. Boriosi also testified to taking Cordaro on trips to New York City and Los Angeles.

The foregoing are most of the significant claims of wrongdoing by Cordaro that were presented to the jury.

At the conclusion of the trial, Cordaro was convicted of conspiracy to commit theft or bribery in violation of Title 18, United States Code, Section 371 (Count 13); bribery in violation of Title 18, United States Code, Section 666(a)(1)(B) (Counts 17-18); conspiracy to commit extortion under color of official right in violation of Title 18, United States Code Section 1951(a) (Count 19); extortion under color of official right in violation of Title 18, United States Code, Section 1951 (Counts 20-21); conspiracy to commit money laundering in violation of Title 18, United States Code Sections 1956(a)(1)(B)(I) and 1957 (Count 25); money laundering in violation of Title 18, United States Code Section 1956(A)(1)(B) (I) (Counts 26-28); racketeering in violation of Title 18, United States Code Section 1962(C) (Count 31); conspiracy to commit racketeering in violation of Title 18, United States Code Section 1962(d) (Count 32); conspiracy to defraud the United States in violation of Title 18, United States Code Section 371 (Count 33); subscribing and filing materially false tax returns in violation of Title 26, United States Code, Section 7206(1) (Counts 34-36); and income tax evasion in violation of Title 26, United States Code, Section 7201 (Counts 3839). Conversely, Cordaro was found not guilty of Counts 1-12, 29-30, and 41.

A Judgment was entered against Cordaro on February 13, 2012. (*See* Cordaro I, Doc. 267). Cordaro was sentenced to a term of imprisonment of 132 months.

Cordaro and co-Defendant Munchak appealed to the United States Court of Appeals for the Third Circuit.  *See United States v. Munchak*, 527 F. App'x 191 (3d Cir. 2013).  The Third Circuit affirmed Cordaro's conviction and sentence on May 31, 2013. *See id*. at 193–95.[2]

On November 21, 2013, Cordaro filed a motion pursuant to 28 U.S.C. § 2255. (*See Cordaro I*, Doc. 321).  Subsequently, on February 24, 2014, Cordaro filed a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. (*See Cordaro I*, Doc. 338).  The motion for a new trial was denied on July 17, 2014. (*See Cordaro I*, Doc. 383).  Thereafter, following an evidentiary hearing, Cordaro's § 2255 Motion was denied and a certificate of appealability was not issued.  (*See Cordaro I*, Docs. 514-515).[3]  Cordaro applied to the Third Circuit for a certificate of appealability, but that request was denied.  (*See Cordaro I*, Doc. 523).

**B.**   ***McDonnell v. United States.***

On June 27, 2016, the Supreme Court issued its decision in *McDonnell v. United States*, - - - U.S. - - -, 136 S. Ct. 2355, 195 L. Ed. 2d 639 (2016).  There, former Virginia Governor Robert McDonnell was convicted in the United States District Court for the Eastern District of Virginia of honest services fraud (18 U.S.C. §§ 1343, 1349) and Hobbs Act extortion (18 U.S.C. § 1951(a)).  *See McDonnell*, 136 S. Ct. 2366.   During his tenure as Governor, McDonnell and his wife accepted over $175,000.00 in loans, gifts, and other benefits from a Virginia businessman seeking McDonnell's assistance in having Virginia's public universities perform research studies on a nutritional supplement.  *See id*. at 2361.  In exchange for those loans,

---

[2]  The Third Circuit did, however, remand for a calculation of the proper amount of restitution to be imposed against Cordaro on Count 33 of the Second Superseding Indictment. *See Munchak*, 527 F. App'x at 196–98.

[3]  Notably, I presided over the proceedings in this Court in *Cordaro I*, *i.e.*, his trial, his post-trial motions, his Rule 33 motion, and his § 2255 motion.  (*See Cordaro I*, *generally*).

4

gifts, and benefits, McDonnell arranged meetings with government officials, hosted and attended events at the Governor's Mansion, and contacted other government officials to encourage state research universities to initiate studies on the supplement. *See id*. at 2365.

At trial, the district court instructed the jury that to convict McDonnell it must "find that he agreed to accept a thing of value in exchange for official action." *Id*. at 2366 (citation and quotation omitted). The district court then described the alleged "official acts" set forth in the indictment, "which involved arranging meetings, hosting events, and contacting government officials." *Id*. The trial court next proceeded to quote the statutory definition of "official act" and "advised the jury that the term encompassed acts that a public official customarily performs, including acts in furtherance of longer-term goals or in a series of steps to exercise influence or achieve an end." *Id*. McDonnell requested, unsuccessfully, that the jury be instructed that the "fact that an activity is a routine activity, or a 'settled practice,' of an office holder does not alone make it an 'official act,'" and that "merely arranging a meeting, attending an event, hosting a reception, or making a speech are not, standing alone, 'official acts,' even if they are settled practices of the official" because they "are not decisions on matters pending before the government." *Id*. The district court likewise declined to instruct the jury that an official act must "intend to or in fact influence a specific official decision the government actually makes - such as awarding a contract, hiring a government employee, issuing a license, passing a law, or implementing a regulation." *Id*. (quotation marks omitted).

After the jury found McDonnell guilty of honest services fraud and Hobbs Act extortion, he moved to vacate the convictions, as well as for a judgment of acquittal. *See id*. at 2367. Both motions were denied by the district court, and, on direct appeal, the Fourth Circuit affirmed McDonnell's convictions. *See id*. The Supreme Court granted *certiorari*. *See id*.

At issue before the Supreme Court was the proper interpretation of "official

act," which is defined in 18 U.S.C. § 201(a)(3) as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." The *McDonnell* Court found that proving an "official act" under § 201(a)(3) requires a two-part showing. *See McDonnell*, 136 S. Ct. 2355, 2368.

> First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" before a public official. Second, the Government must prove that the public official made a decision or took an action "on" that question, matter, cause, suit, proceeding, or controversy, or agreed to do so.

*Id*.

As to the first showing, the Court clarified that a "question" or "matter" "must be similar in nature to a 'cause, suit, proceeding, or controversy.'" *Id*. at 2369. And, the "question, matter, cause, suit, proceeding or controversy" must "involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." *Id*. at 2372. That "question, matter, cause, suit, proceeding or controversy" must also be "specific" and "focused" and "concrete". *Id*. Further, "[p]ending" and "may by law be brought" "suggest something that is relatively circumscribed - the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." *Id*. at 2369.

With respect to the second showing, the *McDonnell* Court explained that the "decision or action may include using his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official." *Id*. at 2372. However, the Court noted that "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so) - without more - does not fit that definition of 'official act.'" *Id*.

Applying those principles, the Court vacated McDonnell's convictions because

6

he was improperly instructed on the meaning of an "official act" under § 201(a)(3). *See id*. at 2373.  The inadequate instructions provided by the district court included that: (1) the jury was not sufficiently informed how to identify the"question, matter, cause, suit, proceeding or controversy"; (2) the jury was not advised that the "question, matter, cause, suit, proceeding or controversy" must be more specific and focused than a broad policy objective; and (3) the jury was not instructed that to convict McDonnell, "it had to find that he made a decision or took an action - or agreed to do so - on the identified "question, matter, cause, suit, proceeding or controversy,' . . ." *Id*. at 2373-75.  Given that the jury was not correctly instructed on the meaning of an "official act" and finding that McDonnell may have been convicted "for conduct that is not unlawful," the Supreme Court vacated the convictions and remanded the case to the Fourth Circuit.  *Id*. at 2375.

## C.    Application for Second or Successive § 2255 Motion.

Following the Supreme Court's decision in *McDonnell*, Cordaro filed an application in the Third Circuit for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255.  *See In re Cordaro*, No. 16-4156 (3d Cir.).  The Third Circuit denied Cordaro's request and finding his reliance on *McDonnell* misplaced "as it did not announce a new rule of constitutional law, but rather clarified the meaning of what constitutes an 'official act' under the federal bribery statute, 18 U.S.C. § 201." *Id*., No. 16-4156, slip op. at 1 (3d Cir. Dec. 22, 2016)  (citation omitted).  However, the Third Circuit observed that it had "not considered whether claims like Cordaro's would be viable in a 28 U.S.C. § 2241 petition."  *Id*. (citation omitted).

## D.    The Petition.

Cordaro filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on February 3, 2017.  (*See* Doc. 1, *generally*).  Habeas relief is warranted, says Cordaro, pursuant to *McDonnell v. United States*, - - - U.S. - - -, 136 S. Ct. 2355, 195 L. Ed. 2d 639 (2016), which "announced a more stringent standard for proving the *quid pro quo* required for a conviction of bribery and extortion under

7

color of official right (Hobbs Act extortion) . . . ." (Doc. 1, 1). Thus, because he is incarcerated for "conduct that the law does not now deem criminal," Cordaro contends that his conviction and sentence for charges of Hobbs Act extortion, bribery, and racketeering must be vacated. (*Id.*).

The Government was directed to respond to the Petition, (*see* Doc. 6, *generally*; Doc. 13, *generally*), which it did on March 30, 2017. (*See* Doc.16, *generally*). Cordaro filed his reply to the Government's response on April 13, 2017. (*See* Doc. 18, *generally*).

Oral argument on the Petition was held before Magistrate Judge Mehalchick on July 19, 2017. (*See* Doc. 27, *generally*). Cordaro filed a supplemental brief in support of the Petition on July 28, 2017, (*see* Doc. 30, *generally*), to which the Government responded, (*see* Doc. 31, *generally*), and which Cordaro filed a reply thereto. (*See* Doc. 32, *generally*).

## E.      The Report and Recommendation.

Magistrate Judge Mehalchick issued the Report and Recommendation under review on September 1, 2017. (*See* Doc. 34, *generally*). After reviewing the relevant proceedings in *Cordaro I*, the Supreme Court's *McDonnell* decision, and post-*McDonnell* opinions from the Third Circuit and elsewhere involving the application of *McDonnell* to cases on direct appeal or in the context of a § 2255 motion, the Magistrate Judge first considered whether § 2241 relief was available to Cordaro. (*See id*. at 2-21). The Magistrate Judge concluded that the § 2241 Petition in this case is properly before this Court because "there is a chance that Cordaro is incarcerated for conduct that does not constitute a crime" and as *McDonnell* was decided after his conviction became final and his § 2255 motion was denied, "he had no earlier opportunity to test the legality of his detention." (*Id*. at 21). Accordingly, the Magistrate Judge proceed to review the merits of the Petition. (*See id*. at 21-34).

In doing so, the Magistrate Judge concluded that the jury instructions were insufficient under *McDonnell* because they contained an overly broad definition of

official acts. (*See id*. at 23-25). The Magistrate Judge nevertheless recommends that the Petition be denied because Cordaro fails to demonstrate his actual innocence. (*See id*. at 27-34). The case here, unlike that presented in *McDonnell*, explained the Magistrate Judge,

> did not rely on any . . . routine actions. The jury was not presented evidence of arranging meetings or hosting events, but of soliciting payments in exchange for forming and maintaining government contracts or influencing other officials tasked with making those decisions. The actions presented to a jury remain indisputably in the realm of official acts even under the most liberal interpretation of *McDonnell*.

(*Id*. at 29). Moreover, as detailed in the Report and Recommendation, "[t]he evidence at trial was straightforward" and "established that, as to Acker and Highland, Cordaro was engaged in a *quid pro quo* bribery and extortion scheme such that even if the jury had been instructed by the Court on the more narrow definition of 'official act' no reasonably [sic] juror could reasonably find he was not guilty of these charges." (*Id*. at 30-31). Thus, because "[n]othing in the *McDonnell* decision changes the outcome for Cordaro in his criminal case, and no reasonable juror could fail to find that the actions by Cordaro at issue here - the acceptance of money in exchange for the awarding and maintenance of contracts, was an 'official act' as clarified by *McDonnell*," Magistrate Judge Mehalchick recommends that the Petition be denied. (*Id*. at 34-35).

**F.      The Objections to the Report and Recommendation.**

Cordaro timely filed objections to the Report and Recommendation. (*See* Doc. 37, *generally*). Cordaro requests that the Report and Recommendation be rejected because: (1) he established his actual innocence since the jury may have convicted him for acts that are not criminal following *McDonnell*; (2) the overwhelming evidence weighs in favor of his innocence; and (3) *McDonnell* is applicable to his convictions under 18 U.S.C. § 666. (*See id*.). Cordaro's objections to the Report and Recommendation have been fully briefed and are ripe for disposition.

## II. Legal Standard

When objections to the magistrate judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo* determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id.* at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).

## III. Discussion

Cordaro seeks relief pursuant to 28 U.S.C. § 2241, (*see* Doc. 1, *generally*), which provides in pertinent part for the grant of habeas corpus on the application of a prisoner held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.[4] Magistrate Judge Mehalchick, as stated, found

---

[4]     The Third Circuit recently explained that two conditions must be satisfied to permit access to § 2241:

> First, a prisoner must assert a "claim of 'actual innocence' on the theory that 'he is being detained for conduct that has subsequently been rendered non-criminal by an intervening Supreme Court decision' and our own precedent construing an intervening Supreme Court decision" - in other words, when there is a change in statutory caselaw that applies retroactively in cases on collateral review. And second, the prisoner must be "otherwise barred from challenging the legality of the conviction under § 2255." Stated differently, the prisoner has "had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate."

10

that Cordaro could properly seek relief pursuant to § 2241, and no objection has been filed to this portion of the Report and Recommendation. Likewise, there has been no objection to the Magistrate Judge's conclusion that to be entitled to the relief he seeks here under § 2241, Cordaro must demonstrate that he is actually innocent of the Hobbs Act extortion, bribery, and racketeering charges, *i.e.*, that it is more likely than not that no reasonable juror would have convicted him of those charges had the jury been instructed in accordance with *McDonnell*. Finding no plain error in these or any other portions of the Report and Recommendation that were not objected to by the parties, I will adopt Magistrate Judge Mehalchick's recommendation that § 2241 is an available means for Cordaro to seek relief in this case,[5] and, to be entitled to such relief, he must demonstrate his actual innocence of the Hobbs Act extortion, bribery, and racketeering charges.

Turning to Cordaro's first objection to the Report and Recommendation, he contends that he established actual innocence because the jury may have convicted him for acts which are not criminal under *McDonnell*. (*See* Doc. 37, 2-9). More particularly, Cordaro disputes the Magistrate Judge's assertion that this case did not rely on routine actions such as arranging meetings, hosting events, or making telephone calls. (*See id.* at 3). Cordaro contends that this assertion is "devoid of any citation to the trial record" and "overlooks ample evidence that Mr. Cordaro engaged in conduct that, although lawful under *McDonnell*, may have been the basis for his convictions under the erroneous instructions that were given at his trial." (*Id.*) The trial evidence cited by Cordaro in support of this argument includes: (1) testimony presented by the Government that he called Hughes to ask why McLaine was working

---

*Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 180 (3d Cir. 2017) (internal citations omitted).

[5]   I, like the Magistrate Judge, have not uncovered any cases addressing the application of *McDonnell* in a § 2241 proceeding.

on a project at the airport; and (2) testimony that he agreed to meet with McLaine on at least two occasions to hear concerns about Acker Associates' existing contracts with the County. (*See id*. at 4-5). According to Cordaro, these meetings and phone call should not have been presented to the jury, and, as a result of the faulty jury instructions, the jury could have relied on these non-criminal acts when it found him guilty of Counts 17 and 20. (*See id*.).

Similarly, Cordaro argues that the testimony of Finan presented by the Government was insufficient "alone" to support his convictions on Counts 18 and 21. (*Id*. at 5). Cordaro maintains that Finan testified only that Cordaro requested the removal of a second architect from the project, leaving Highland as the sole remaining architect. (*See id*.). This, says Cordaro, is not an "official act" under *McDonnell*, and that absent from the trial record is any evidence that he ordered or exerted pressure upon Finan to remove that architect. (*See id*. at 5-6). The record, Cordaro explains, demonstrates the contrary, as testimony was presented at trial that the second architect wanted to get out of its contract because of slow payments. (*See id*. at 6-7). Thus, Cordaro contends that his convictions on Counts 18 and 21 fail because the Government failed to demonstrate that he exerted pressure on Finan or otherwise provided advice knowing or intending such advice would form the basis of Finan's official act. (*See id*. at 7-8). Cordaro further argues in reply that, based on Finan's testimony, the Hughes call, and the two McLaine meetings, his convictions must be vacated because he "has properly pointed to at least three clear examples of constituent meetings and telephone calls that the jury could have interpreted as an 'official act' without the limiting definition required under *McDonnell*." (Doc. 40, 3-4 (emphasis omitted)).

Cordaro's first objection to the Report and Recommendation will be overruled. Here, despite his citation to trial testimony regarding a call with Hughes, meetings with McLaine, and his conversation with Finan, Cordaro fails to demonstrate that it is more likely than not that no reasonable juror would have convicted him if the jury

had been instructed in accordance with *McDonnell*.[6] The Magistrate Judge correctly observed that the trial evidence did not consist of loans, gifts, or other benefits to Cordaro for arranging meetings or hosting events like in *McDonnell*, but rather involved the solicitation of payments in exchange for forming and maintaining governments contracts or otherwise influencing other officials responsible for those decisions. (*See* Doc. 34, 29). The Magistrate Judge characterized the evidence presented at trial as "straightforward - Cordaro and his fellow Commissioner, Anthony Munchak, agreed to maintain existing development contracts between Acker Associates and the County in exchange for payments from Acker; and further, Cordaro accepted funds from Highland Associates which Highland agreed to pay to ensure prompt payment of accounts receivable owed by the County incurred in the maintenance of the County's 'COLTS' transit system." (*Id*. at 31). More specifically, the evidence at trial included that Cordaro and his co-Defendant maintained contracts with Highland and ensured payment for work Highland performed in return for three $30,000.00 cash payments. It was testified to that Cordaro called Highland to express his appreciation after one of the payments was made. Testimony was also provided that the final $30,000.00 Highland payment was made directly to Cordaro. Regarding the payments from Acker to Cordaro (through Hughes), Hughes and McLaine testified that these payments were for Cordaro, and that $10,000 was paid monthly to Cordaro and $365,000 was paid over three years. Acker, according to the trial testimony, gave Form 1099s reflecting these payments to Hughes. McLaine testified that Hughes

---

[6]    To be sure, the Supreme Court in *McDonnell* made clear that "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so) - without more - does not fit the definition of 'official act.'" *McDonnell*, 136 S. Ct. at 2372. As articulated in detail in both in the text here and the Magistrate Judge's Report and Recommendation, the evidence in this case encompassed much more than having a meeting or talking to other officials; it involved a pay-to-play scheme in which Cordaro and his co-Defendant solicited payments in exchange for forming, maintaining, and ensuring payment on government contracts.

performed no services for Acker other than to be the conduit for the payment of bribes to Cordaro.  This straightforward evidence of the demands and payments received by Cordaro to form and maintain government contracts undoubtedly remains unlawful after *McDonnell*, and, as such, any reasonable juror would have convicted him on the charges in Counts 17-18 and 20-21 of the Second Superseding Indictment.

In his second objection, Cordaro contends that the Report and Recommendation should be rejected because the overwhelming evidence weighs in favor of his innocence.  (*See* Doc. 37, 9-14).  Insisting that the core of the Government's case against him came from the testimony of Hughes and McLaine, and noting that Hughes has since been indicted in this Court, *see United States of America v. Hughes*, No. 3:17-CR-0010, and McLaine has been convicted of theft in Northampton County, *see, e.g.*, *Commonwealth v. McLaine*, 150 A.3d 70, 72-74 (Pa. Super. Ct. 2016), Cordaro asserts that the trial record and post-trial proceedings confirm his innocence.  (*See* Doc. 37, 9-14; Doc. 40, 7-11 (citing, *inter alia*, *Schulp v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (under gateway standard for actual innocence, "newly presented evidence may indeed call into question the credibility of the witnesses presented at trial.")))  Restated, Cordaro contends that the Hughes indictment and McLaine conviction, coupled with the evidence of meetings and phone calls that are not official acts under *McDonnell*, render it "more probable than not that no reasonable juror would have found Mr. Cordaro guilty beyond a reasonable doubt." (Doc. 40, 11).

Cordaro's second objection to the Report and Recommendation will be overruled.  Under the actual innocence standard, "the district court does not exercise its 'independent judgment as to whether reasonable doubt exists'; rather, the actual innocence standard 'requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Bruce*, 868 F. 3d at 184 (quoting *Schlup*, 513 U.S. at 329, 115 S. Ct. 851); *see id*. at 185 ("extraordinary showing" required to establish actual innocence).  As was stated repeatedly both in

14

this Court and the Third Circuit in *Cordaro I*, the evidence of Cordaro's guilt was overwhelming. *See*, *e.g.*, *United States v. Munchak*, 527 F. App'x 191, 196 (3d Cir. 2013) (denying Cordaro's direct appeal and noting "the strength of the Government's case"); (*Cordaro I*, Docs. 514-515 (discussing strength of the Government's case in denying Cordaro's § 2255 motion)); (*Cordaro I*, Docs. 294-295 (denying Cordaro's motion for bail pending appeal and observing the "strong supporting evidence" of guilt)); *accord United States v. Munchak*, 648 F. App'x 195, 198 (3d Cir. 2016) (affirming denial of Cordaro's co-Defendant's motion for new trial since the new evidence did not discredit trial testimony, "it is impossible to conclude that it creates a reasonable likelihood (or, indeed, any rational chance) of a different outcome by the jury."). In view of the evidence presented at trial, a reasonable, properly instructed jury would again find Cordaro guilty of the charged offenses. Moreover, the impeachment evidence cited by Cordaro, even if presented to a jury, does not render it more likely than not that no reasonable juror would have convicted him in light of the Government's case and evidence against him, including the above-mentioned recorded conversations of Cordaro, that McLaine (through a business) paid Hughes hundreds of thousands of dollars over a three year period for no reason other than to be the conduit for the payment of bribes to Cordaro, and the trial testimony regarding the extorted payments from Highland. (*See Cordaro I*, Doc. 514, 19-22).[7] Because a reasonable juror would have convicted Cordaro in light of all the evidence, his § 2241 Petition fails.

Lastly, Cordaro objects to the Magistrate Judge's recommendation that the

---

[7] Cordaro does not explain how the purported impeachment evidence demonstrates his innocence with respect to the extortion and bribery convictions pertaining to Highland, *i.e.*, Counts 18 and 21. Rather, he argues that the Highland officials "blatantly lied" at trial, and that testimony was "proven to be false" in *Cordaro I* in the Rule 33 and § 2255 filings. (*See* Doc. 37, 13 n.10). To the contrary, I (as well as the Third Circuit) rejected those arguments in *Cordaro I*. *See Munchak*, 648 F. App'x at 198; (*Cordaro I*, Doc. 394).

challenges to his § 666 convictions be denied, arguing that *McDonnell* also applies to those charges.  (*See* Doc. 37, 14-15; Doc. 40, 11-13).  Cordaro's final objection will be overruled.  As set forth at length, Cordaro is not entitled to relief under *McDonnell*. Further, the jury instructions did not broaden the scope of the conduct of Cordaro's § 666 convictions and the instructions related to those charges "as a whole fairly and adequately submitted the issues in the case to the jury."  *United States v. Repak*, 852 F.3d 230, 257 (3d Cir. 2017).   Accordingly, rejection of the Report and Recommendation on the final ground raised by Cordaro is not warranted.

### IV. Conclusion

For the above stated reasons, the Report and Recommendation will be adopted, Cordaro's objections thereto will be overruled, and the § 2241 Petition will be denied.

An appropriate order follows.


December 11, 2017                                    /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                              United States District Judge

16